IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JINNY BEAUTY SUPPLY CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> PUREO NATURAL PRODUCTS LLC, et al., <br><br> Defendants/Counter-Plaintiffs, <br><br> v. <br><br> JINNY BEAUTY SUPPLY CO., INC., et al., <br><br> Counter-Defendants. | CIVIL ACTION FILE <br> NO. 1:23-CV-4349-TWT |

OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Counter-Defendant Jinny Beauty Supply Co., Inc.'s Motion to Dismiss Counterclaims [Doc. 10], the Counter-Defendant OTC Beauty Magazine Corp.'s Motion to Dismiss Counterclaims [Doc. 13], and the Defendants Pureo Natural Products LLC and Trendz Beauty Academy LLC's Motion for Judgment on the Pleadings [Doc. 23]. For the reasons set forth below, the Counter-Defendant Jinny Beauty Supply's Motion to Dismiss Counterclaims [Doc. 10] is DENIED; the Counter-Defendant OTC Beauty Magazine's Motion to Dismiss Counterclaims [Doc. 13] is DENIED; and the Defendants Pureo Natural Products and Trendz Beauty Academy's Motion for Judgment on the

Pleadings [Doc. 23] is GRANTED.

## I.     Background

This case arises from a business relationship gone awry. Beginning in March 2023, the Plaintiff Jinny Beauty Supply Co., Inc. began purchasing certain beauty products from the Defendants Pureo Natural Products LLC and Trendz Beauty Academy LLC. (Compl. ¶ 21). In July 2023, however, Pureo and Trendz stopped fulfilling Jinny's purchase orders after Jinny allegedly published a defamatory advertisement about their products in the OTC Beauty Magazine. (*Id.* ¶ 25; Countercl. ¶¶ 29, 41). Jinny brings breach of contract and promissory estoppel claims against Pureo and Trendz, seeking fulfillment of their purchase orders as a remedy. Pureo and Trendz bring counterclaims against Jinny and Counter-Defendant OTC Beauty Magazine Corp., asserting twenty distinct direct, vicarious, and contributory liability claims arising from the alleged false advertisement. Jinny and OTC move to dismiss the counterclaims, and Pureo and Trendz move for judgment on the pleadings as to Jinny's claims.

## II.    Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is

2

"improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

The Federal Rules of Civil Procedure allow a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant a motion for judgment on the pleadings where "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v.*

3

*Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion for judgment on the pleadings, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the nonmoving party. *Scott*, 405 F.3d at 1253.

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs*

4

v. *Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortgage Invs. Corp.*, 987 F.3d at 1356.

### III.  Discussion

The Defendants move for judgment on the pleadings as to the Plaintiff's breach of contract and promissory estoppel claims, and the Counter-Defendants move to dismiss eighteen of the Defendants' twenty counterclaims against them. The Court begins with the Motion for Judgment on the Pleadings and then considers the Partial Motions to Dismiss Counterclaims.

#### A. Motion for Judgment on the Pleadings

The Defendants move for judgment on the pleadings on the Plaintiff's breach of contract and promissory estoppel claims, arguing that the Plaintiff fails to allege that the parties reached a meeting of the minds on the material terms of any agreement and that the Plaintiff fails to demonstrate the existence of a written agreement substantiating those material terms. (Br. in Supp. of Defs.' Mot. for J. on the Pleadings, at 4). The Plaintiff argues, in response, that judgment on the pleadings is improper because the parties entered an enforceable requirements contract that the Defendants breached by refusing to fulfill the Plaintiff's purchase orders in July 2023. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for J. on the Pleadings, at 8–9).

5

To begin with, the Court agrees with the Defendants that the Plaintiff's allegations do not support the existence of a requirements contract between the parties. (Reply Br. in Supp. of Defs.' Mot. for J. on the Pleadings, at 2–7). "It is elementary that a requirements contract is one in which the buyer expressly or implicitly promises he will obtain his goods or services from the seller exclusively." *Aminter, LLC v. MacDermid Printing Sols., LLC*, 2009 WL 10698642, at *3 (N.D. Ga. Aug. 10, 2009) (citation omitted). None of the Plaintiff's allegations plead the existence of a requirements contract that would expressly (or impliedly) obligate it to buy its goods exclusively from the Defendants, nor do the attached email exhibits substantiate the existence of such a contract. (*See* Compl. ¶¶ 10–23, Exs. A, B). And that the Defendants were the only sellers of these specific goods does not inherently imply a requirements contract between the parties. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for J. on the Pleadings, at 15–16). Indeed, much of the Plaintiff's briefing on this issue displays a lack of basic understanding of fundamental contract law.

Under these circumstances, general contract formation law governs the present case. *See* O.C.G.A. § 11-2-206 ("An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods . . . ."). Here, the Plaintiff's alleged July

6

2023 purchase orders constituted offers that could be accepted by the Defendants with either a promise to ship or with prompt shipment of the goods. But the Defendants also were entitled to reject fulfillment of those purchase orders, as they did here, and the Plaintiff has therefore failed to state a plausible breach of contract claim against the Defendants.[1]

Turning to the promissory estoppel claim, the Defendants contend that the claim fails as a matter of law because the Plaintiff does not plausibly allege that an enforceable promise binds the parties. (Br. in Supp. of Defs.' Mot. for J. on the Pleadings, at 10). In response, the Plaintiff argues that it pleads a promissory estoppel claim because it alleges that the Defendants promised they would sell it their products, which they knew it was planning to resell, and that it relied on their promise to its detriment. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for J. on the Pleadings, at 20). Having found that the Plaintiff failed to plead an enforceable promise between the parties that would support a breach of contract theory as to the July 2023 purchase orders, the Court likewise concludes that the Plaintiff has failed to plead the existence of an enforceable promise that would support a plausible promissory estoppel claim. *See Foley Co. v. Warren Eng'g, Inc.*, 804 F. Supp. 1540, 1544–45 (N.D. Ga.

---

[1] Even if the Plaintiff had plausibly pleaded a breach of contract claim, the sale of goods provision to the statute of frauds would also bar the claim because the purported agreement exceeded $500 in value and was not formalized in a writing signed by the Defendants. *See* O.C.G.A. § 11-2-201(1).

1992). Without a valid underlying substantive claim, the Plaintiff's claim for attorneys' fees also fails. Accordingly, the Defendants are entitled to judgment on the pleadings on all of the Plaintiff's claims against them.

### B. Motions to Dismiss Counterclaims

The Court turns next to the Motions to Dismiss Counterclaims. Counter-Defendant Jinny moves to dismiss Counterclaims I through XVIII as largely containing conclusory allegations lacking a factual foundation. (Br. in Supp. of Jinny's Mot. to Dismiss Countercls., at 6). Counter-Defendant OTC moves to dismiss all Counterclaims against it for improper joinder, lack of personal jurisdiction and venue, and defective summons. (Br. in Supp. of OTC's Mot. to Dismiss Countercls., at 1–2). The Court addresses the motions in turn.

#### 1. Counterclaims Against Jinny

Jinny divides its opposition to the counterclaims into three categories. First, Jinny moves to dismiss the direct liability counterclaims,[2] arguing that the claims are derivative because Jinny was not responsible for the contested advertisement in the OTC Beauty Magazine and because Jinny and OTC are separate corporate entities. (Br. in Supp. of Jinny's Mot. to Dismiss

---

[2] This category includes the counterclaims for False or Misleading Advertising under 15 U.S.C. § 1125(a) (Count I), Unfair and Deceptive Trade Practices in Violation of the Uniform Deceptive Trade Practice Act ("UDTPA") under Ga. Code Ann. § 10-1-372 (Count II); Common Law Unfair Competition (Count III); Tortious Interference with Business Relations (Count X); Libel under O.C.G.A. § 51-5-1 et seq. (Count XIII); and Libel Per Se under O.C.G.A. § 51-5-4 et seq. (Count XIV).

8

Countercls., at 8–9). Second, Jinny moves to dismiss the vicarious liability counterclaims,[3] arguing that the Counter-Plaintiffs' assertion of an agency relationship between Jinny and OTC lacks factual allegations detailing Jinny's right to control the time and manner of OTC's work. (*Id.* at 10–11). Finally, Jinny moves to dismiss the contributory liability counterclaims,[4] contending that the claims restate the elements of the causes of action without specifying facts to support them. (*Id.* at 12–13). In the alternative, the Jinny requests a more definite statement as to the facts supporting the counterclaims. (*Id.* at 13–14).

In response, the Counter-Plaintiffs refute the notion that they merely state legal conclusions in their claims, arguing that they allege "Jinny and OTC Beauty jointly publish monthly editions of OTC Beauty Magazine, and together, are responsible for the development, advertising, marketing, sale, and distribution of the magazine." (Counter-Pls.' Resp. Br. in Opp'n to Jinny's

---

[3] This category includes the counterclaims for Vicarious False or Misleading Advertising (Count IV), Vicarious Unfair and Deceptive Trade Practices in Violation of the UDTPA (Count V), Vicarious Common Law Unfair Competition (Count VI), Vicarious Tortious Interference with Business Relations (Count XI); Vicarious Liability for Libel (Count XV), and Vicarious Liability for Libel Per Se (Count XVII).

[4] This category includes the counterclaims for Contributory False or Misleading Advertising (Count VII), Contributory Unfair and Deceptive Trade Practices in Violation of the UDTPA (Count VIII), Contributory Common Law Unfair Competition (Count IX), Contributory Tortious Interference with Business Relations (Count XII), Contributory Liability for Libel (Count XVI), and Contributory Liability for Libel Per Se (Count XVIII).

Mot. to Dismiss Countercls., at 5 (citing Countercls. ¶¶ 29, 34)). They refer to OTC as a marketing arm for Jinny that Jinny uses to advertise its products. (*Id.* (citing Countercls. ¶¶ 35–36)). Finally, they claim that "[a]t this stage in the case, without the benefit of discovery setting forth Jinny's corporate structure and the nature and extent of its control over OTC Beauty, [they] have plausibly pled allegations relating to Jinny's direct, vicarious, or contributory liability." (*Id.* at 7 (citation omitted)).

The Court finds that the Counter-Plaintiffs have plausibly pleaded their counterclaims against Jinny. Importantly, they allege that Jinny and OTC "jointly publish monthly editions of the OTC Beauty Magazine," which supports the direct liability claims against Jinny. (Countercls. ¶ 29). That Jinny claims it is a separate corporate entity from OTC and disavows responsibility for the advertisement, at the pleading stage, does not defeat the claims themselves. Rather, as an alleged joint publisher of the magazine that ran the allegedly false advertisement, Jinny is a proper direct liability defendant.[5] The vicarious and contributory liability claims are also properly pleaded in the alternative without the benefit of discovery setting forth the

---

[5] Jinny argues that the tortious interference claim should be dismissed because the Counter-Plaintiffs fail to plead allegations regarding malice, intent to injure, and third-party breach or discontinuance of a business relationship. (Br. in Supp. of Jinny's Mot. to Dismiss Countercls., at 9). But the Court finds the Counter-Plaintiffs' allegations to be plausible and sufficient to state a claim considering the nature of the alleged false advertisement. (Countercls. ¶ 118).

10

corporate structure between Jinny and OTC. *See Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1357 (N.D. Ga. 2018).

Jinny attempts to distance itself from the allegedly false advertisement with the Declaration of Cyrus Jackson, who claims he alone drafted and placed the advertisement. (Jackson Decl., Doc. 9; Br. in Supp. of Jinny's Mot. to Dismiss Countercls., at 3–4). But Jackson's declarations implicate the merits of the Counter-Plaintiffs' claims and are therefore inappropriate for resolution at the motion to dismiss stage. Jinny also takes issue with the Counter-Plaintiffs' pleading upon information and belief. (Br. in Supp. of Jinny's Mot. to Dismiss Countercls., at 4–6 (citing *Segment Consulting Mgmt., Ltd. v. Bliss Nutraceticals, LLC*, 2022 WL 252309, at *4 n.1 (N.D. Ga. Jan. 27, 2022))). But pleading upon information and belief "will not automatically render an allegation insufficient where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Ryte v. Express Courier Int'l, Inc.*, 2018 WL 10847495, at *2 (N.D. Ga. Nov. 19, 2018) (quotation marks and citations omitted). Here, the Counter-Plaintiffs outline Jinny's allegedly culpable conduct in detail, (Countercls. ¶¶ 40–58), and the Counter-Defendants retain control over the facts detailing their own corporate structure. For these reasons, Counter-Defendant Jinny's Motion to Dismiss should be denied.

11

### 2. Counterclaims Against OTC

The Court turns next to the counterclaims against OTC, which it claims should be dismissed on grounds of misjoinder, lack of personal jurisdiction and venue, and defective summons. Beginning with the joinder issue, OTC claims that the Counter-Plaintiffs should have requested leave of this Court to add it as a party to this lawsuit. (Br. in Supp. of OTC's Mot. to Dismiss Countercls., at 3 (citing *A.L. Williams & Assocs., Inc. v. D.R. Richardson & Assocs., Inc.*, 98 F.R.D. 748, 753 (N.D. Ga. 1983))). But as the Counter-Plaintiffs point out, "courts have held . . . that leave of court is not required by the Federal Rules of Civil Procedure to join a previous non-party as a counterclaim defendant." *Bank of N.Y. Mellon Tr. Co. v. Prefco Nineteen, Ltd. P'ship*, 2010 U.S. Dist. LEXIS 153456, at *7–8 (N.D. Ga. Feb. 18, 2010) (alteration, quotation marks, and citations omitted). Therefore, the Counter-Plaintiffs properly joined OTC as a party to the case.

OTC next claims that it is not subject to personal jurisdiction in this Court (1) because its conduct is not within the reach of Georgia's long-arm statute, (2) because the Court's exercise of jurisdiction over it would run afoul of due process protections, and (3) because it is not essentially at home in Georgia. (Br. in Supp. of OTC's Mot. to Dismiss Countercls., at 4–12). The Counter-Plaintiffs dispute all three of these contentions, claiming that OTC is subject to both specific and general jurisdiction in Georgia. (Counter-Pls.' Resp.

12

Br. in Opp'n to OTC's Mot. to Dismiss Countercls., at 7–15).

On the issue of personal jurisdiction, OTC offers the Declaration of its registered agent Steve Fischman who states that "OTC has never maintained an office in Georgia," (Fischman Decl., Doc. 13-2, ¶ 4), thereby attempting to shift the burden back to Counter-Plaintiffs to produce evidence supporting personal jurisdiction. Despite this effort, the Court concludes that the Counter-Plaintiffs have carried their burden to show that OTC is subject to general personal jurisdiction in Georgia. Specifically, the Counter-Plaintiffs include as exhibits to the Declaration of Katie Hall a multitude of sources indicating that OTC maintains its principal place of business in Atlanta. (Hall Decl., Doc. 20-2). And tellingly, "Fischman neither attests that OTC's principal place of business is not in Georgia nor directly rebuts Counter-Plaintiffs' allegations by informing the Court where OTC's purported principal place of business is actually located." (Counter-Pls.' Resp. Br. in Opp'n to OTC's Mot. to Dismiss Countercls., at 10 n.4). Under these circumstances, the Court concludes that OTC is subject to general personal jurisdiction in Georgia.[6] And because OTC is subject to personal jurisdiction here, venue is also proper in this Court. *See* 28 U.S.C. § 1391(b)(1), (c)(2).

---

[6] OTC is likewise subject to specific personal jurisdiction in Georgia because it transacts business within and maintains minimum contacts with the state, including receiving magazine subscription payments at an Atlanta location and distributing magazines in Georgia, including the magazine containing the allegedly false advertisement. (*See* Hall Decl., Doc. 20-2).

13

Finally, OTC attacks the validity of the summons that the Counter-Plaintiffs originally served on it because the summons was missing the clerk's signature and the Court's seal. (Br. in Supp. of OTC's Mot. to Dismiss Countercls., at 14–15). OTC cites several provisions of Federal Rule of Civil Procedure 4 in support but declines to cite Rule 4(a)(2), which provides that the Court "may permit a summons to be amended." Fed. R. Civ. P. 4(a)(2). Because the Counter-Plaintiffs already served a corrected electronic summons on OTC, the Court permits the amendment. (Doc. 18; Counter-Pls.' Resp. Br. in Opp'n to OTC's Mot. to Dismiss Countercls., at 4–6). Accordingly, none of OTC's asserted grounds require dismissal of the claims against it, and its motion to dismiss should therefore be denied.

## IV.   Conclusion

For the reasons set forth above, the Counter-Defendant Jinny Beauty Supply Co.'s Motion to Dismiss Counterclaims [Doc. 10] is DENIED; the Counter-Defendant OTC Beauty Magazine's Motion to Dismiss Counterclaims [Doc. 13] is DENIED; and the Defendants Pureo Natural Products and Trendz Beauty Academy's Motion for Judgment on the Pleadings [Doc. 23] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Defendants on Counts I, II, and III of the Plaintiff's Complaint.

SO ORDERED, this <u>  19th  </u> day of March, 2024.

/s/ Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge